case number 22-2038. Good morning may it please the court my name is Amanda Skinner and I'm here on behalf of the appellant Mr. Rodriguez. A de novo review of this record does not support the finding that there was reasonable suspicion for the stopping agent to pull over Mr. Rodriguez's vehicle. When we look to the Brignone-Ponce factors we would submit that the first four factors, characteristics of the area, proximity to the border, usual traffic patterns, and previous experience of the agent with alien traffic, those are essentially fixed factors. Those are factors that would apply to any vehicle driving down that road at that point being observed by that agent. It's really factors five through eight that are sort of the heart of the discussion in this case and I'd like to jump right into factor five information about recent illegal border crossings in the area. There was testimony at the suppression hearing that this agents, he and his colleagues had stopped many alien smuggling schemes that week. This is an area that there's testimony that's routinely used for smuggling schemes. But factor five also goes to the BOLO in this case and the BOLO in this case was very non-specific. The quote at the suppression hearing was an agent observed a gray SUV that had possibly made an incursion over the international boundary and or had loaded up in a border area and was continuing north on some qualifying language there. Basically somebody saw a gray SUV. This originated from the Douglas Border Patrol Station. The government supplemented the record to include the exhibits from the suppression hearing and there's a map. Douglas is not on that map but there was testimony that the station is at the international border with Agua Prieta. That's at the southernmost point of the maps that you have in the record. So this BOLO originated as conceded by the officer from an area 50 miles from where he stopped Mr. Rodriguez and so when he noticed the vehicle five minutes after receiving the BOLO it was not reasonable for him to assume that this was the vehicle from the BOLO. There was limited direct and cross-examination testimony of the agent with respect to timing and his only testimony on this issue was that no info given, there was no information given for when the vehicle was seen but he knew it was imminent and so if it was imminent from vehicle was seen at the border. Yes and that would be our argument. I mean there wasn't a lot of context given but that's our argument that if you imminently saw a vehicle at the Douglas Border Patrol Station it is not reasonable to then determine that the vehicle you see five minutes after receiving that BOLO 50 miles away that that is the same vehicle. So we would ask the court to take that into consideration. With respect to factor six, the driver's behavior. I didn't see that the district court discussed that. The district court did make a finding on page 11 of the order quote it was reasonable for the stopping agent to believe that the Jeep matched the BOLO description. Yeah I'm which is that you get the boat he gets the BOLO and five minutes later the BOLO which was apparently 50 miles occurring 50 miles away about an incident occurring 50 miles away and five minutes later he makes a stop. Was there anything about that from the district court? There wasn't your honor but we're on a de novo review and this court needs to review findings of fact to determine if they're clearly erroneous and we would submit that it's clearly erroneous to not I do not believe that we explicitly made that argument below but because we're on a de novo review and because it's it is such a clear error such a such a big point we would ask the court to take that into consideration. With respect to factor six the driver's behavior the district court properly didn't give this factor much weight. There was testimony from the agent that he thought that the acknowledgment that the driver had seen him and the district court properly said you know I'm not going to give that much weight this was an unmarked unit and I'd ask the court to look at Arvizu, Barron Cabrera, Chermaya, Miranda Enriquez and Quintana Garcia those are cases where marked border patrol vehicles were seen and someone reacted. Here we have a driver going the speed limit and the district court not really crediting anything about his behavior to go to factor six. Factor seven discusses aspects of the vehicle you know station wagon large vehicle those are things that the court has typically relied on in this case it was a Jeep but we'd ask the court to consider one of the cases that we cited the basically the rider truck case Barron Cabrera that quote we cannot accept a per se rule allowing a rider truck to automatically satisfy prongs seven and eight you know in that case there were additional factors. Agent testified that when he saw rider trucks typically they were towing a vehicle or another vehicle was riding in tandem with them there's nothing specific about this Jeep you know other than the fact that it's an SUV that that would give much weight to factor seven and the government agrees that factor eight doesn't apply here the the vehicle did not appear to be heavily loaded. In terms of that Bolo there's another piece of information specific to this vehicle that that is important the Bolo was for a gray vehicle the agent in this case did a registration check prior to pulling over Mr. Rodriguez and he knew when he did that registration check that he was following a gold Jeep so the vehicle being dusty it certainly looked could have looked to be gray and and that's true and that would be reasonable for the officer when he pulled up and saw that it was pulled the registration and thought it was a gold vehicle and saw it was gold vehicle to think perhaps the border patrol couldn't see it. So even even with the district court credit yeah even with the district court crediting you know that it gray and gold could be close there's something else important about that registration check that registration check revealed to the agent before he stopped Mr. Rodriguez that he was following a car whose home registration was in Duncan which is north of Rodeo and the agent testified that there's no direct route from Rodeo to Duncan but if you were traveling north out of Rodeo and headed to Duncan you would be on highway 80 and you would have to link up with highway 10 so we did argue that he was on Mr. Rodriguez was on the most direct route to his area of home registration and there are a number of cases that we cited including Arvizu, Gandara, Salina and Westhoven where a registration check revealed information to the agent that would call into question the path of travel. Arvizu specifically revealed that this vehicle in Arvizu was registered to an address four blocks from the border notorious smuggling area that gave the agent more and in our case you know part of the argument about the error is that this really wasn't considered by the district court that that we have some of these things that that really should have dispelled any sort of of hunch that the the stopping agent had and we cited a Sixth Circuit case bell because that analysis is very helpful it basically says that you know even when the government points to several factors that the court has recognized as valid considerations informing reasonable suspicion they may not together provide reasonable suspicion if they're all relatively minor and subject to significant qualification so I think the distance from where the Bolo originated and the fact that the vehicle was on the most direct route to its home registration area give us significant qualification and really the only other two factors that are present here are the observation by the agent that the windows were tinted and there were out-of-state plates with respect to the window tint I just want to point out the the photographs of the vehicle for specifically five and six those vehicles don't show tinted windows on the front driver or passenger side it's possible the windows are rolled down in the photo but there's no evidence in the record about why we're seeing the vehicle presenting that way with either unrolled or untinted windows in the front and with respect to window tints we cited a suppression hearing in front of a magistrate judge USB Johnson where the court found it's hardly uncommon for vehicles in general and particularly in southern Arizona and we would submit the southwest to have tinted windows or There's also case law isn't there indicating that tinted windows can be a factor? Yes they can be a factor and but again under totality of the circumstances analysis we're arguing that there just simply isn't enough here to borrow language from from Frazier which Judge Seymour authored reasonable suspicion is a low bar but it's not that low with respect to the out-of-state plates the that's a case that also includes this area of New Mexico rodeo specifically and in that case the court said in this case the significance of an Arizona plate is diminished due to rodeos proximity to the Arizona state line and so this is another factor you know when you look at how the Sixth Circuit treated this in Bell that really gives a significant qualification to any factors that could potentially push the analysis over the reasonable suspicion bar and I'd like to reserve my remaining time for rebuttal if there aren't additional questions may please the court my name is Luke Rizzo I'm an AUSA in the District of New Mexico this court should affirm the lower courts decision that under the factors articulated in the seminal case Brigani-Ponce border patrol agent Campbell had the requisite reasonable suspicion to stop the suspect vehicle to investigate a potential smuggling offense that decision was based on the lower courts factual determinations then being in pertinent part that agent Campbell knew highway 80 was a highly used route for trafficking the area where the vehicle was stopped was just about 50 miles from the international border there was a lot of recent alien smuggling in that area the border patrol agent he was able to testify there were eight encounters the prior week leading to this incident regarding the vehicle's appearance the appellant's vehicle it was covered in a layer of dust and dirt there was a visible handprint on the back window of the vehicle this all played into the agent's formation of reasonable suspicion he based on the bolo he received he believed the vehicle was driving off-road collected the dirt and dust and then there was a loading event well the bolo he received was from it was from his station it was in Lordsburg New Mexico he received that bolo as he was a patrolling highway 80 the bolo said be on the lookout for a gray SUV driving north on highway 85 minutes later he sees what he believes is a great gray SUV driving north on highway 80 but he say to counsel's argument that the bolo was about something that they just seen and then sent this out this is 50 miles away from there well I think it's a fair point and I would also know on the record it's alluded to but maybe perhaps not explained fully the nature of the bolo in in the realm of law enforcement so when agent Campbell he testifies when he receives a bolo that means to him he needs to be on the lookout right now that's why dispatch gives that to him that's what he does now that bolo the way it's communicated to him especially along the border where these agents are covering a vast amount of territory the nature of how that's generated may not have come across quite clearly on the record but what happened what what is on the record and what we do know is that in the Douglas Arizona area which is right on the border there's a border patrol agent who witnesses a vehicle as it's described in the bolo potentially coming across the border or making a pickup this is in the record that is on the record in the sense that we know what we know what the about the incursion event we know somebody saw something something going on at the border yes and it was a border patrol agent the bolo relates to what went on at the border correct you know that this agent is 50 miles away from the border when he gets the bolo why is it reasonable for him to think oh okay this happened at the border 50 miles away I see this vehicle I was trying to I'll get to that right now so that bolo well okay so I should say the initial observation we know that happens at the border that agent relays that to his station which is the Douglas Arizona station they they quite clearly lose track of the vehicle so they put out a bolo to the Lordsburg station which is about well it is a track of the vehicle and that they put out a bolo because they lost track of the vehicle well so again I think it is a that's important I think the agent he testifies he receives a bolo from his station from his dispatch from Lordsburg Lordsburg is not on the border it's about so Lordsburg received that information what tell me what's on the record about this timing issue what does he know about when this border intrusion hurts agent Campbell doesn't know when when it occurred so that's what we know we don't he doesn't know anything he just knows there's been a bolo from something that happened at the border but I wouldn't say he doesn't know anything I want to know what's on the record we can't assume he knew anything other than what we what you told us which is he got this bolo I guess I can't argue with that your honor we know that he received the bolo and then immediately he sees a vehicle that matches the description of the bolo and then he does a registration check and sees that this is not a gray SUV but a gold SUV and it's registered to someone who lives north of there quite a distance north of there and quite a distance from the border that is correct and this is going in the most direct way towards that home address vehicles right well speaking on all of that there's nothing on the record that indicates where the vehicle was going Duncan the officer testified that this would have been the most direct route there isn't a direct route he said to the to the city when people Duncan Arizona your honor but he testified specifically he said yes this this highway 80 would have been the most directed best route to get back home basically so he knows all of that in addition to so what what does he have now that's creating a suspicion that this is the gray vehicle that they see on the border 50 miles away so he doesn't know where the vehicle is going it's presumed but that's important we know from our visu that it's important for instance that that vehicle was registered to an individual who lived four blocks away from the border so it's a factor and it's something this officer considered your honor what is also on the record is that when the agent when he does a registration check it does come back as gold the vehicle is in fact gold but from his testimony he doesn't pick up on that he doesn't know does he one where the other word whether he picked up on that he does he says he realizes it was in fact gold well after the arrest when he's back at the station and it's in the lighting as indicated in those exhibits put that's part of the mistaken fact that the court found to be objective objectively reasonable so we know he knows that 50 miles from where from the border this vehicle is headed towards a location that makes sense headed north towards the location and it's potentially a gray SUV that's what we know and that's all we have well what else anything of course your honor um he we have the Bolo as the court has discussed and the appearance of the vehicle if I was indicating the dust covering the vehicle the Bolo does indicate a border incursion a lot of these areas are this is a rural area in and of itself it certainly wouldn't be out of the ordinary for a vehicle to be dirty the agent again but I didn't see the officer testified about that I didn't see anything about the dust a didn't say it was uncommon for vehicles in that area to have a layer of dust I mean what makes the layer of dust on an SUV in southern New Mexico be particularized it's the totality your honor it's just totality of every fact that the border patrol agent gathers from the Bolo to his pursuit of the vehicle to his observations a lot of it has to do with you know I think the compelling to put it kindly I would say they brush aside Bergani-Ponce factors the first five oh those those are always applicable but I mean that's not always a case and Bergani-Ponce was crafted with the purpose of the border with the purpose of those factors if they are there they that adds to reasonable suspicion now no one factor is dispositive that's obvious but all of those factors do matter the location the geography the recent smuggling activity in the area that this is the borderland right is it the council makes a point that it is a totality of the circumstance review and the district court in making that review didn't didn't even factor in the whole registration plate information the fact that this was registered to a distance north of there that it was traveling on a on a path that was the most direct route there it made no no findings about that so did the district court perhaps miss some of some important circumstances including the timing issue and make no findings about that no you're right like an obvious issue in determining that that was reasonable to believe that this was the when when did this vehicle cross the border well you already think it was 50 miles away I mean the district court didn't make any findings is my point on those those factors those points well I think there are findings in the sense that we know where the vehicle is registered we know that I mean the Arizona plate but the significance of it the district court didn't consider I don't think the court I think the court did consider the significance of that I think it just took all of these facts and again using the totality and the factors that Brighani Ponce lays out the it's on the record where the vehicle is registered where the vehicle is going that is not on the record I just want to reiterate that because I think it's we don't know where yeah yeah we just know what the officer testified about understood your honor and I guess maybe it's difficult based on what is on the record and what the agent testifies to specifically about the timing of the bolo I am aware that the appellant raises that and the court is questioning that and it is on the record in the sense that the agent says a bolo means beyond the lookout right now so it would be I just think it would be on to suggest the bolo means the opposite of that an hour now from now maybe tomorrow that's not on the record and it doesn't make on the record how extensive the area the bolo went out to was I mean did it just go out to a five-mile area the bolo he receives from his station from Lordsburg goes to every Border Patrol agent in the Lordsburg area which is what how large is that area geographically I I mean that isn't on the record either your honor so I don't know how I would multiple counties it's like it's quite miles and miles and miles a lot of other people are getting this too so should they also assume that it's should every officer assume that it's imminent for them that this vehicle is across the border is imminent yeah I mean every officer that hears it should assume that means it's it's near them agents on Highway 80 should your honor because the bolo indicates a northbound vehicle looking for it but yeah these are these facts are on the record as well why highway 80 it's the only paved road without a checkpoint coming from that southwestern area of New Mexico southeastern part of Arizona that's what the agent is doing and he was on highway 80 at the time he received the bolo he immediately started looking for a vehicle this was the first vehicle he was driving rodeo is described as a small village he didn't recognize it as being local traffic and I mean when it taught when it comes to other aspects of the vehicle the timing of the bolo I think it all plays in I think you know the timing makes more sense again in the totality and I don't know if it's the lower court writes about it too much because I think the agent's testimony sort of clarifies that with an understanding of the region and an understanding well if a bolo is put out to every agent in the Lordsburg area the vehicles probably in the Lordsburg area right now maybe it's not and the matching of the description I think again you know in the appellate's brief they accused the lower court of not taking the totality and overemphasizing individual factors that's what's written in the appellant's brief I don't think that that was a fair a fair way to define it the lower court devoted an entire section of its written opinion to that holistic analysis it has a section titled the totality of the circumstances justified to stop where it combines all the information it needed and it gathered to make a coherent summary of its finding you know factual determinations the court should accept them unless they're clearly clearly erroneous and with the evidence and the light most favorable to the prevailing party I think the lower courts opinion I think it sums up all the fact the factors pretty well and I see my time's out to conclude so I'll leave it at that thank you thank you I believe we can meet the clearly erroneous standard with respect to the the distance and timing issue there just isn't enough in the record here the agent could have expanded on his testimony on cross when he was asked you know do you know when this originated this activity that was seen at the border when it happened and he testified that he receives bolos that don't give timing information and he believed it was imminent our argument is that imminent goes to the activity that was observed at the Douglas station the government's argument is that imminent goes to you know what he should have been looking for and I think that's how we get to the to satisfying the clearly erroneous standard there's not enough the agent didn't give us enough to understand why he thought it was reasonable he didn't testify that it's routinely you know an hour after activity that agents in the area where the person would be if they continue traveling down that route we just don't have that I'd ask the court to compare this to USB defendants Cortez and Hernandez Laura this was a meticulous investigation by agents into a known smuggler where there is significant discussion in the opinion about all the work that agents did to calculate distance and time of travel you know if we if we know that crossings occurred at this time and this is when we saw a vehicle last week we're looking for the same guy and so they calculated when they should be basically doing their sting operation to try to catch this vehicle and they did end up catching him because they put in all of this investigative work on calculating yes we cited it in our brief and it's two defendant names I just didn't want to call it Cortez because we have another Cortez but if the second defendant is Hernandez Laura and it's a Supreme Court case from 81 I'd like to just briefly discuss the the issue of why the dust would be significant the agent testified that the dust a dusty vehicle was significant to him and the handprint was significant to him because quote somebody had to drive on a dirt road at some point the tailgate had to have been opened and then once something was put inside somebody closed it with two hands and the location indicated it was probably the driver doing it so that's again a lot of sort of we're not sure language and he's basically describing someone using a vehicle as it's intended in this case it's it's interesting because the agent also testified at the suppression hearing that he touched the vehicle on the back passenger tailgate and that's a just a law enforcement technique to get their you know fingerprint on the car he didn't follow up that testimony by saying and when I touched the vehicle I could tell the dust was fresh when I touched the vehicle I could see my own handprint or I could see my palm print I would submit that you know just to get sort of like a real-world example that handprint on the back vehicle is much more similar to us seeing a car driving down the road that has washed me on the back window we don't know when that was put there that can stay on a vehicle you know everybody's seen that you could this could be very old dust that is dried and caked on and so this is just another example of information that isn't included in the record to the extent that it would allow the court to to find that it was not clearly erroneous for the district court to rely on that factor there are no questions I have nothing else thank you thank you counsel thank you both appreciate your very very good arguments both excused in case we submit